May it please the court, Jason Carr appearing on behalf of defendant appellant Rasberry. With leave of the court I intend to preserve a minute or two of my time for rebuttal. As most questions in the law, especially at the appellate level, there's a factual and legal component to the issue before this court. But the legal component in this instance proves to be a legal puzzle of some challenge. The issue reduces down to what level of suspicion, if any, is required for a parole search that is conducted by probation and parole officers. The question to my mind is suspicion or reasonable cause, suspicion to believe what? To believe a crime has been committed? To believe that there's been violation of parole conditions? And of course I'm addressing the questions that were implicit in the order sent out to discuss the Nevada cases. You never raised those and neither did the briefs, neither was it discussed below, but it seems as though Nevada law is very crucial and those cases we cited may be crucial to your analysis. Is that true? In some extent, yes, Your Honor. In order to answer Judge Fletcher's question, aren't they very relevant? They could be relevant, Your Honor. I would submit that they aren't in this case and I would be prepared to agree that the parolee, the terms of the parolee search clause in this case are determinative. And the parolee search clause in this case allows for a search of not just new crime violations, but also the search for evidence of violations of the conditions of parole. The important distinction in my mind is a temporal question. In other words, will the search at issue actually uncover what it is that the parolee officer is supposed to be searching for? None of those cases we asked you to comment is germane to this. In other words, here you have a situation where the parole officer can do what? There's been a violation of his parole. Isn't that correct? He was found with marijuana. He was not found with marijuana, Your Honor. There was a presumptive positive test for marijuana. Well, but there was a test for marijuana and that would be a violation of his parole conditions, right? If it turned out that the test had validity, yes. Okay. All right. The positive result isn't going to mean anything because the test probably isn't valid. That's not likely to be the inference drawn by the parole officer, is it? But the parole officer, the reasonable parole officer would know, as this Court has recognized in Scott, that a presumptive positive test is not reliable. I'm not dealing in determining a crime here. This guy's on parole. He should be in jail. And the fact he's out on parole means that there's a lot of latitude here. Now, what was he in jail for? Because he's a trafficker. Because a guy does drugs. And all of a sudden he tests positive. So the parole officer says, oh, no problem. You get a free one. What does a parole officer what's his reasonable cause to believe at that point? The whole foundation of reasonable cause here is what the Court has mentioned, that his prior criminal history, and these are the factors relied upon by the district court, prior criminal history, the crime for which he was on parole, and the presumptive positive. The argument that I make is that the parole officer should have taken one additional reasonable step, which is to send the sample in for confirmation to determine whether or not Raspberry had in fact used drugs. That's what parole officers should do under these circumstances. That's what our opinion would say, that once there's a parolee whose condition of parole is you've got to stay away, can't use, can't possess drugs, test is positive, that the parole officer has to stop everything he's doing and have another test before he takes one further move. That's what our opinion would say. And what law, Nevada or U.S. constitutional law would we support that with? Well, under Nevada laws, articulated most recently in Allenby State, the parole officer must have reasonable grounds to believe a violation of parole has occurred to justify a warrantless search. My argument, and this is just, it's based partly on the science of the test. The presumptive positive tests just do not have an indicia of reliability to meet the threshold of reasonable grounds. I didn't read your brief. Was that in your brief? Yes, it is. This is an unusual case for a parolee violation, because usually a parolee violator, a supervised release violator, has a plethora of grounds upon which they have violated the terms of their... The problem I have with your argument is that the standard is reasonable cause to believe, if I'm looking at the Nevada cases, that there's been a violation of parole. That doesn't mean beyond a reasonable doubt. It's just reasonable cause to believe. And in other circumstances, reasonable cause, you know, I've got some grounds to believe it. It may or may not turn out to be true. A positive drug test seems to me to satisfy that, even though it may well be that some drug tests, upon retesting, okay, maybe he was eating poppy seeds. I don't know what he was doing. But the test is not beyond a reasonable doubt. There is a specter of arbitrary and capricious parole officer action if they're going to rely on a test that we know to be unreliable. Oh, wait, stop. You keep saying we know to be unreliable. We test all the time. We know it's not 100 percent, but that doesn't mean we think it shouldn't be paid attention to at all. And in the case of a parolee, I mean, the whole point of the parole search is let the parolee know, look, you're on thin ice. You've used your chance. You've been convicted. To say to the parolee, but there's a gray area here, so we're going to keep the parole officer from coming down on you if you test positive just encourages the parolee to think, hey, I can test positive. It doesn't matter because I can beat that. I have plenty of time to get rid of the bad stuff I've got in my house because he can't test me for days. I mean, what logic is there in that? Not true, Your Honor, simply because based on the actual practicalities of how this drug testing works, you void a urine sample, provide it to the testing officer. An initial screening is done. If the screening comes up positive, the test sample is sent to the laboratory for confirmatory testing. And as noted in Scott, this Court's opinion, the confirmatory testing is reliable. If that comes back negative or positive, we know the answer to some degree of certainty. Now, what about certainty? We need certainty because of the specter of arbitrary capricious action. We can use a test we know can be unreliable. Do we have anything in the record that tells us, let's say you get a positive result for the initial screening, and then you send it on for further confirmation testing. Is there anything in the record or anything we can consult legitimately in this case that tells us, Well, 60% of the time, the initial screening proves to be right. 80% of the time, 13% of the time. Do we have anything that will allow us to make that judgment? The actual statistical analysis of what testing, what the percentage likelihood of failure of on-site testing versus GCMS is not in this record, but it is a ready resort to research. GCMS testing, I can tell this Court, and I know from my experience in dealing with urine tests, is extremely reliable. And it is the gold standard, the standard upon which federal probation offices, our federal probation offices use before they seek revocation, because the on-site testing, the initial screen, isn't just that, a screen. It is an initial indicator to the probation officer, there may be a problem here, we need to send the sample in for the GCMS testing. Here, and I'm not asking the question in a lot of these Fourth Amendment cases, is what would you have them do? What would they have done that a reasonable law enforcement officer, or in this case, a parole officer, Again, we're in the parole area. And we're not in the area of gathering evidence for a suspected crime. We're in an area where, I ask you the question specifically because it concerns me, how we would follow your theory that you've thrown at us, and it is in your brief, I'm very sorry. I just didn't read it that way. I was looking for the law that you tied with unreliable drug tests on a parolee relative to a search. And I don't find that specific federal law, if you will, or, I mean, I understand you're arguing about the test, but we're in a parolee situation, how you adapt that to that versus a test relative for reasonable probable cause to arrest or something when you're in a car and whatever. This is a parolee. And where's your law authority that we're going to follow to make your point in our opinion? Because this would have to be an opinion unless there's some law I missed. Well, what I would, and I am advocating for one additional step. In cases like the old case, Lotta v. Fitzsimons, they caught the individual with marijuana in his hand. Certainly that is a strong indicia of use, no question. And it's a spectrum. There has to be a minimum threshold of a quantum of evidence to lead to reasonable grounds, and that is the test under Nevada law, which, incidentally, if we're going to use special needs analysis under the Supreme Court case, Griffin, the Nevada law is relevant. It's one of the few instances in the Fourth Amendment analysis where state law is relevant. But I would, there has to be a minimum threshold. He still, although greatly reduced expectation of privacy, there's still some, and that expectation of privacy, I would argue, is somewhat buttressed by the fact that the parole condition at issue does require a reasonable cause. The question is whether it's reasonable. As ascertained by the parole officer. Excuse me? As ascertained by the parole officer. Yes. It doesn't say by a court. It doesn't say by a magistrate judge. It says by a parole officer whose job it is to be on the tail of the parolee. Is there some grammatical incongruence there as to whether reasonable, as used in the law, generally connotes the reasonable person's standard? And they drafted the clause, so it should be read. Okay. I think we have your argument in hand. You've used your time. Let's hear from the other side, and we'll give you a minute to respond. Okay. Thank you, Your Honor. May it please the Court, Peter Leavitt on behalf of the appellee, United States. This case, as Your Honors have pointed out, involves a resident's search of a parolee who tested positive for THC, the active ingredient in marijuana. Now, is that theory that was proposed today on argument proposed below in this case in the form that he says? In other words, are we to extrapolate because of the, quote, unreliability of this test that now we somehow have got a new manifestation of how to interpret Nevada and constitutional law in this case? Your Honor, I believe that that argument was not raised below. If it was, it was certainly not raised with the vehemence with which it was raised today. As I understand his argument is, if we're going to look at what the parole officer is looking at in a parolee search situation, you have to take a look at this test first before you can go into it and let the parole officer make his mind up. He can't even do anything. He's made a preliminary test. Whoops, got to stop everything, send it off to the lab, and get a positive test before I can move. Is that the law? That is incorrect. That is not the law. Was that argued below that way? I do not believe it was argued that way, Your Honor. I mean, I read it in the briefs, but I'm not, because it seems to me, and I don't want to misinterpret what counsel is saying. You heard it. It seems to me what he said was once that field test was made, stop the music, get the material, send it off, get a positive test before that parole officer can make any move. I am not aware of any reported decision to support such a proposition, Your Honor. I would note that Your Honor's question about the cases that the Court flagged for us is perfectly relevant. In United States v. Lada, we had a situation where this Court decided in 1975 that a California parolee convicted of armed robbery was in a situation where a parole officer had reason to believe he was violating the conditions of parole and he arrested him. What was that suspicion based on? Your Honor, I don't believe the opinion said. It said that the parole officer, quote, had reason to believe he was violating the conditions of parole, end quote. In any event, the Lada was arrested. They found a marijuana, a small amount of marijuana on him. And about six hours later, they searched his house without a warrant, pursuant to the parole clause, and they found four and a half pounds of marijuana. What's interesting in that case and what's applicable to this case is that the Ninth Circuit rejected emphatically the necessity that all the argument that all further investigations cease after the defendant's arrest. To the contrary, this Court pointed out that after Lada's arrest with the pipe, the need to search his residence intensified. The parole officer needed to determine whether he was still a good parole risk. They needed to know whether he was a regular user of marijuana and other drugs. They needed to know whether he was a frequent or casual user, whether he was engaged in distribution. Now, that's Lada, who was convicted previously of armed robbery. In the present case, defendant ---- Robert, let me just stop there just a second. I think counsel addressed that. He had a pipe and he had actual marijuana. Nobody questioned that I can say. That's why I asked the question before. Nobody questioned Lada about the nature of the substance which sprung the parole search into motion, i.e., the pipe and the marijuana. Here, counsel keeps going back and saying, well, we have this defective test. We have just a field test here, and we can't rely upon it. So Lada does ---- Lada shows what you can do if you've got the suspicion again from what you found. Here, we still have to address ---- I don't know whether we have to or not, but we have to address what counsel has raised. This was only a field test. Yes, Your Honor, and the distinction Your Honor draws is quite correct. I would, however, note that the magistrate who made the factual findings in this case deemed it, quote, extremely reliable at excerpts of the record, page 58, that the drug sample had been conducted at the State Department of Probation and Parole. In addition, addressing Raspberry's argument that it was only a solitary test, the magistrate emphasized on the same page, excerpt from record 58, that it was significant this positive drug test in light of his prior criminal history, i.e., two prior convictions for drug offenses. Let me ask you this, if I might. First off, I gather you were unaware of these Nevada cases prior to our order coming out? Is that right or wrong? That is correct, Your Honor. Well, in the parole area, it's hard to believe you could have missed these cases. I mean, they've popped up on our screen pretty fast, but it's kind of disturbing because it makes our argument very difficult because you had never had a chance to brief them. At the time the initial briefs were prepared, these cases were not obviously briefed in them. Should Your Honor require any supplemental brief, I would be happy to do so. Okay. Under the Supreme Court's case in Sampson, assuming that the parolee is made sufficiently aware, the state may attach a condition of search to granting a parole that requires nothing whatsoever. That is to say, under Sampson, so long as the parolee knows, listen, we can search you any time, day or night, based on any reason we have or don't have. That's okay. But the reasoning in Sampson requires that the parolee be made aware of this. As I look at the language here in paragraph 14, it says, you shall submit to a search of your personal automobile, place of residence by a parole officer, any time of day or night without a warrant, upon reasonable cause as ascertained by the parole officer. Well, it doesn't say upon reasonable cause to believe you violated conditions of parole. It doesn't say upon reasonable cause to believe that you've committed some new crime. It just doesn't say. So how closely do we need to read this language, how closely do we need to read Sampson, in order to find that the expectation of privacy that the parolee has has been sufficiently diminished that he comes within Sampson and the search is now permitted? Well, first of all, Your Honor, based upon a finding of reasonable suspicion of violating conditions of parole, because conditions of parole is not written here. Well, first of all, Your Honor, Your Honor is quite correct that the Nevada state condition of parole affords a greater level of protection to the parolee than the California condition examined in Sampson. Correct. That was suspicion-less. Here we do have some degree of reasonable cause. Well, how much reasonable cause do we have with respect to his parole? I know from the Nevada case law that the cases say that reasonable cause can be in Nevada, reasonable cause to believe that there's been a violation of parole. How do we know that that was a condition of his parole? Well, Your Honor, I believe that this is plainly by its terms not the objectively reasonable suspicion such as we see in cases like Terry and its progeny. This is not objectively reasonable cause. This is upon reasonable cause as ascertained by the parole officer. But reasonable cause to believe what? I believe, Your Honor, that the two questions the answer to that question answers both questions. It's reasonable cause to believe that a condition of parole, namely paragraph 4, no possession or use of drugs, has been violated. However, I would also argue that a positive drug test in this case also furnishes reasonable cause that some sort of criminal activity is afoot. Isn't that based on the California cases that we asked you to comment on? I mean, the Nevada case that we asked you to comment on. That's what the Nevada cases say relative to the Nevada standard, isn't it? Yes, Your Honor. In the Allen v. Nevada case, it was held that a confidential informant tip that defendant had two weapons was deemed by the parole officer to believe there was a violation of the parole agreement. The Court held that in this case the parole officer was given credible information, presumably referring to the confidential informant's information, that Allen was in violation of the parole in possession of firearms, a direct violation of the parole agreement. And the Seem case says the same thing, and also Seem cites the latter. So it seems to me that what Nevada has said at least about the parole conditions that were incident to this case is that as long as the officer has reasonable grounds to believe that a violation of parole or probation has occurred, then he has reason to search. That's quite right, Your Honor. And here, what he'd have to go on is the fact that he had a positive test, field test, for possibly marijuana. Is that right? That's correct, Your Honor. That was a positive THC, the active ingredient in marijuana test, viewed within the ambit of two prior charges. And its history was crime, was drugs, and trafficking drugs. That's correct, Your Honor. And the condition of his parole was you shall not use drugs, be around drugs, et cetera. That's correct, Your Honor. It's more precise than that. But that was one of his conditions. He couldn't use drugs or possess drugs. That's correct, Your Honor, in paragraph four of the parole agreement. Okay. You're done? Thank you very much. We'll give you a minute. Our argument in Sampson, the Supreme Court case, the Supreme Court talks about how the expectation of privacy for an individual on parole is reduced by two mechanisms. The first is just their status as a parolee. The second is the actual terms of the search clause at issue. In California, it's the statute. In our case, it's a search clause as part of the parole agreement signed by Mr. Raspberry. In this case, the second aspect, the search clause, gives Raspberry, in essence, an enhanced expectation of privacy or at least an expectation that the search will not occur unless there is reasonable cause. And that comes down to our argument of was there a reasonable cause. The argument is there was not because an initial on-site drug test that was denied in writing by Raspberry does not meet the threshold of reasonable cause. Okay. We've heard that one. Let's assume that the test was dead bank positive. Every authority in the world positively tested for marijuana instantaneously. Now how does your argument go? Our argument would be greatly diminished, and we'd fall, I believe, under the latter holding. Under latter, when there is conclusive proof of possession or use of marijuana, that's enough for the search. Okay. Okay. Good. Thank you. Thanks both sides for your helpful arguments. The case of United States v. Raspberry is now submitted for decision.
judges: Brunetti, Fletcher, Clifton